UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENNIE GIBSON,<br><br>                               Plaintiff,<br><br>-against-<br><br>EMPLOYEES, SUPERVISORS ADM. OF DOCTORS NURSES EAST ELMHURST HOSP MED STUDENTS; WARDEN OF 5POINT CORRECTIONAL FACILITY; UNKNOWN STATE CORRECTIONAL OFFICERS IN RECEIVING ROOM DEPARTURE AREA; DOCTORS OF NURSES ADM. NURSES STUDENTS MT. SINAI; LAWRENCE NURSING HOME NURSES DOCTORS ADM. INCLUDING SOCIAL WORKERS; DOCTORS MEDICAL ATTENDANTS ADMINISTERING TECHNA SHOTS AT DOWNSTATE; UNKNOWN INDIVIDUALS SWIPING PL. MAIL,<br><br>                               Defendants. | 1:19-CV-0204 (LLS)<br><br>ORDER OF DISMISSAL |

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is not presently incarcerated, filed his complaint while he was held in the North Infirmary Command ("NIC") on Rikers Island. He sues the Warden and unidentified members of the staff of the Five Points Correctional Facility ("Five Points"), as well as unidentified members of the staffs of what appear to be Elmhurst Hospital ("Elmhurst"), Mt. Sinai Hospital ("Mt. Sinai"), the Downstate Correctional Facility ("Downstate"), and the Lawrence Nursing Home ("Lawrence"). He asserts that the defendants violated his federal constitutional rights, and he seeks damages and unspecified declaratory and injunctive relief. He sues the defendants in their individual and official capacities. The Court construes the complaint as asserting claims under 42 U.S.C. § 1983 and under state law.

Plaintiff has paid the relevant fees to bring this action.[1] For the reasons discussed below, the Court dismisses Plaintiff's claims under § 1983 against Mt. Sinai and Lawrence staff members for failure to state a claim on which relief may be granted. The Court also dismisses Plaintiff's claims under § 1983 against Downstate, Five Points, and Elmhurst staff members in their individual capacities for the same reason, but the Court grants Plaintiff leave to replead those claims in an amended complaint. The Court further dismisses Plaintiff's claims under § 1983 against Downstate and Five Points staff members in their official capacities because those defendants are immune from suit as to those claims. In addition, the Court dismisses Plaintiff's claims under § 1983 against Elmhurst staff members in their official capacities for failure to state a claim on which relief may be granted.

## STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA") requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity.[2] *See* 28 U.S.C. § 1915A(a). The Court must dismiss a

---

[1] Plaintiff originally sought to proceed *in forma pauperis* ("IFP"), but Chief Judge Colleen McMahon denied Plaintiff IFP status and dismissed this action without prejudice because Plaintiff is barred under 28 U.S.C. § 1915(g) from proceeding with this action IFP as a prisoner. (ECF 10.) Chief Judge McMahon granted Plaintiff 30 days' leave to pay the relevant fees to bring this action (*id.*), but after Plaintiff failed to pay the fees, she entered judgment dismissing this action without prejudice. (ECF 12.) Plaintiff then filed a letter and a notice of appeal. Chief Judge McMahon construed the letter as a motion to alter or amend the Court's judgment under Rule 59(e) of the Federal Rules of Civil Procedure and for reconsideration under Local Civil Rule 6.3, granted the motion, and vacated the judgment dismissing this action. (ECF 15.) Chief Judge McMahon also granted Plaintiff another 30 days' leave to pay the fees. (*Id.*) Plaintiff paid the fees in response to Chief Judge McMahon's latest order. On August 12, 2020, the United States Court of Appeals for the Second Circuit dismissed Plaintiff's appeal for lack of jurisdiction. *Gibson v. Unknown Male Patients*, No. 20-728 (2d Cir. Aug. 12, 2020). The action was then reassigned to the undersigned.

[2] For the purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release,

prisoner's complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal

---

or [a] diversionary program." 28 U.S.C. § 1915A(c). Because Plaintiff filed his complaint while he was held in the NIC, he is a considered a prisoner under the PLRA. *See Gibson v. City Municipality of New York*, 692 F.3d 198, 201 (2d Cir. 2012) ("[T]he relevant time at which a person must be 'a prisoner' within the meaning of the PLRA in order for the [PLRA's] restrictions to apply is 'the moment the plaintiff files his complaint.'") (citation omitted).

conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff makes the following allegations: In November 2017, while Plaintiff was incarcerated at Downstate, he received a "techna shot," which caused him to feel weak. (ECF 2, at 4.) He was then transferred from Downstate to Five Points, and on January 4 or 5, 2018, he was released on parole from Five Points. But before he was released, he asked Five Points officials to issue him a pair of boots because of the snow that had fallen at Five Points and in New York City, which is where plaintiff was going to go upon his release. Five Points officials refused to issue him a pair of boots.[3]

Upon his release and arrival in New York City, Plaintiff was unable to find a homeless shelter in which to stay and went to a junkyard to seek shelter. He "then burned 200 lbs of copper for money." (*Id.*) Someone told him that his fingers had turned blue, but he did not feel cold. Approximately two days after his release, he felt "pain or slowness in walking . . . ." (*Id.*) By the third day after his release, Plaintiff could only walk for 15 minutes before having to sit down for three hours because of the pain he was feeling in his feet. He then went to an unspecified hospital's emergency room for treatment.

Plaintiff spent three days in the hospital "without immediate attention." (*Id.*) He then "developed . . . blackened violet skin on [his] toes and a small blue dot on [his] heel." (*Id.*) Physicians and medical students told him that he "had gangrene and open wounds." But the next

---

[3] Plaintiff states that "people within the system have been cutting [his] sneakers or boots and placing grime within." (ECF 2, at 4.)

day, he "was told [that he] had no open wound[s] [and] was . . . asked [had he been] anywhere [near] government stored chemicals." (*Id.*)

One month later, some physicians told him that amputation was necessary while others told him that it was not. He "was given extremely tight bandaging and then told [he] should not be given extremely tight bandaging or wraps." (*Id.*) He was then transferred to Lawrence for rehabilitation.

Staff members at Lawrence told him that his "toes were dead" and that they needed to be amputated. (*Id.*) He received a second opinion from the staff of another health-care facility, who stated that his "toes were dead and [that] Mt. Sinai could do stem cell research." (*Id.*) At Mt. Sinai, Plaintiff underwent an examination with "radioactive dye [through an] MRI and X rays," which revealed that there was circulation "in toes dead but legs perfect [sic]." (*Id.*) The staff at Mt. Sinai "immediately sought amputation." (*Id.* at 5.) Plaintiff was told that he had a bacterial infection. But he was then told that there was no such infection.

On an unspecified date, Plaintiff went to Elmhurst. The staff at Elmhurst gave him conflicting diagnoses about whether there was a bacterial infection in his blood. He was told that "blood flow in [his] legs [was] excellent" and that he was not suffering from diabetes, but that his "toes are dead and [that] he had dry gangrene." (*Id.*) Plaintiff agreed to the amputation of all his toes. But after they were amputated, physicians the "ripp[ed] his dressings off and [he] experienced more pain"; he "begged to be allowed to change [his] dressings himself." (*Id.*)

Plaintiff was eventually transferred back to Lawrence for rehabilitation. There, he argued "with doctors who kept cutting blue scar tissue off of [his] heel . . . ." (*Id.*) There "was no purplish or black color around [his] heel or smell and [he] considered [himself] normal . . . ."

5

(*Id.*) But the physicians "did not listen [and] kept cutting [so that Plaintiff] developed . . . a foot ulcer . . . ." (*Id.*)

Plaintiff was then transferred back to Mt. Sinai "for debri[d]ng[,] cleansing of wound[s][,] and skin and miniscul[e] cutting." (*Id.* a 6.) Because he was told that "he was susceptible to MRS[,] multiple bacteria[,] or [h]ospital bacteria[,] [he was] moved to a[n] isolated room." He "kept asking do[es] [he] have MRS . . . and couldn't get a straight answer." (*Id.*) At Mt. Sinai, he "woke up with his eyes almost shut[,] swollen[,] and skin itching . . . ." (*Id.*) Mt. Sinai staff told him that he had either chicken pox or herpes simplex; his symptoms were either a reaction to face cream that he had used or to "the skin cells . . . and dust" on his bed. (*Id.*)

Plaintiff was again ordered transferred back to Lawrence; he was "furious" that he had been ordered transferred back there. (*Id.*) Before the transfer, a Mt. Sinai social worker told him that "all these things ke[ep] happening to the Black Man." (*Id.*) (internal quotation marks omitted). Once he was transferred again to Lawrence, he argued with a social worker there, but he hoped that his relationship with the social worker would improve. It did not; the social worker eventually ordered Plaintiff transferred to a homeless shelter. Before he was transferred, and though the wounds on his feet had not healed, Plaintiff was housed with a pedophile in a room on Lawrence's second floor. He was also issued a violation of his parole for failing to report to his parole officer; the Lawrence social worker had spoken to his parole officer, who was aware that Plaintiff had been at Lawrence. When Plaintiff reported for transfer from Lawrence to the shelter, his parole officer was waiting for him.

Lawrence and the hospitals mentioned in Plaintiff's complaint "have a[n] anti black movement with[in] [them]. Jamaican[,] West Indian[,] [and] White [hospital] workers [are secretly] against or openly against American Blacks . . . ." (*Id.*)

## DISCUSSION

Because Plaintiff assets that the defendants violated his federal constitutional rights, the Court construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988).

**A.    Claims against Mt. Sinai and Lawrence staff**

Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . .") (internal quotation marks and citation omitted). Accordingly, "[p]rivate hospitals (and their employees) are generally not considered state actors." *Parker v. Blackerby*, 368 F. Supp. 3d 611, 624 (W.D.N.Y. 2019); *see also Grazette v. Rockefeller*, No. 20-CV-0965, 2020 WL 1940366, at *3 (S.D.N.Y. Apr. 21, 2020) ("A private hospital and its staff are not state actors under § 1983 when they involuntarily commit a plaintiff to a psychiatric hospital under New York's Mental Hygiene Law.") (citation omitted). The same is true with respect to private nursing homes and their employees. *See Blum v. Yaretsky*, 457 U.S. 991, 1006-12 (1982) (private nursing homes' actions to discharge or transfer patients not state action).

Mt. Sinai is a private hospital and its staff members are private individuals. Likewise, Lawrence is a private nursing home and its staff members are private individuals. Plaintiff has alleged no facts showing that Mt. Sinai or Lawrence staff members acted as state actors. The Court therefore dismisses Plaintiff's claims under § 1983 against Mt. Sinai and Lawrence staff members for failure to state a claim on which relief may be granted.[4] *See* 28 U.S.C. § 1915A(b)(1).

## B.   Claims against Downstate, Five Points, and Elmhurst staff

Plaintiff alleges that in November 2017, while he was incarcerated at Downstate, he received a "techna shot," which caused him to feel weak. (ECF 2, at 4.) The Court understands those allegations as asserting claims that Downstate staff members violated Plaintiff's right under the Eighth Amendment against cruel and unusual punishment by providing him with inadequate medical care while he was incarcerated at Downstate.

Plaintiff also alleges that on January 4 or 5, 2018, he was released on parole from Five Points, but that before he was released, Five Points officials denied his request for a pair of boots so that he could walk in the fallen snow. The Court understands those allegations as asserting claims that Five Points staff members violated Plaintiff's right under the Eighth Amendment by exposing Plaintiff to a risk of damage to his future health.

Plaintiff further alleges that on an unspecified date after his release on parole from Five Points, Plaintiff went to Elmhurst, a public hospital, for medical treatment. He asserts that Elmhurst staff members amputated his toes because they were gangrenous. But he also alleges that Elmhurst staff members gave him conflicting diagnoses, and that after his toes had been

---

[4] To the extent that Plaintiff asserts claims under § 1983 against any Lawrence patients – also private individuals – the Court dismisses those claims for the same reason.

8

amputated, Elmhurst physicians "ripped" the dressings off of his feet, causing him pain. (ECF 2, at 5.) The Court understands those allegations as asserting claims that Elmhurst staff members violated Plaintiff's right of substantive due process under the Fourteenth Amendment by causing him unnecessary pain while treating him.

### 1.      Eighth Amendment claims

A prisoner asserting a claim that prison officials violated his right under the Eighth Amendment by failing to provide adequate medical care with regard to the prisoner's then present medical condition must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Darnell v. Pineiro*, 849 F.3d 17, 32-35 (2d Cir. 2017). Deliberate indifference is evaluated under a two-pronged test comprised of both objective and "mental-element" components. *See Darnell*, 849 F.3d at 30-33; *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). For the objective component, it is necessary that the prisoner is or was suffering from a sufficiently serious medical condition that "'could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

For the mental-element component, a convicted prisoner must show that a prison official "knows of and disregards an excessive risk to [the prisoner's] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Allegations of malpractice or the negligent failure to provide adequate medical care do not state a constitutional claim. *See Estelle*, 429 U.S. at 106; *Chance*, 143 F.3d at 703.

A convicted prisoner may be subject to similar requirements to state a claim that prison officials violated his right under the Eighth Amendment with regard to prison officials' failure to

address the prisoner's future serious medical needs. "Prison officials may violate the Eighth Amendment by exposing a prisoner to 'an unreasonable risk of serious damage to his future health,' such as where officials 'ignore medical conditions that are very likely to cause serious illness and needless suffering in the future.'" *Gonzalez v. Hasty*, 755 F. App'x 67, 71-72 (2d Cir. 2018) (summary order) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993), and *Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003)). The Second Circuit has suggested that in order to state such a claim, a prisoner must allege facts to satisfy an objective component – facts that "suggest[] a reasonable inference that the alleged denial [by prison officials] was 'very likely' to result in 'serious illness and needless suffering.'" *Id.* at 72 (quoting *Smith*, 316 F.3d at 188). The prisoner must also allege facts to satisfy a mental-element component – facts that suggest "a reasonable inference," *id.*, that a defendant "acted with 'deliberate indifference' to inmate welfare . . . ." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). This deliberate-indifference component with regard to a prisoner's future serious medical needs is the same as the deliberate-indifference component discussed above with regard to a prisoner's present serious medical needs. *See id.*

### 2. Substantive due process claims

Courts within this Circuit have held that a parolee "cannot state an Eighth Amendment claim of deliberate indifference. . . . ." *Schlosser v. Elzea*, No. 3:19-CV-1380, 2020 WL 887752, *5 (D. Conn. Feb. 24, 2020) (citing cases). Rather, courts have held that such a claim made by a parolee is "appropriately analyzed under the [Due Process Clause of the] Fourteenth Amendment . . . ." *Ciccone v. Ryan*, No. 14-CV-1325, 2015 WL 4739981, at *3 (S.D.N.Y. Aug. 7, 2015) (citing cases), *appeal dismissed*, No. 15-2840 (2d Cir. Oct. 16, 2015); *cf. Darnell*, 849 F.3d at 29 ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual

Punishments Clause of the Eight[h] Amendment."). *But see Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (summary order) (noting that the appellant was a parolee, and that the Second Circuit has "not addressed where parolees fall on the continuum" between claims of deliberate indifference under the Eighth Amendment and such claims under the Due Process Clause of the Fourteenth Amendment). Thus, as to claims of violations of substantive due process brought by parolees,[5] courts within this Circuit have applied the requirements that pretrial detainees must fulfill to state such a claim – those articulated by the Second Circuit in *Darnell*. *See Leath v. Cnty. of Orange*, No. 18-CV-7318, 2020 WL 4016530, at *3 n.2 (S.D.N.Y. July 15, 2020); *Smith v. Fricke*, No. 9:17-CV-0244, 2019 WL 4602973, at *12 (N.D.N.Y. Aug. 7. 2019) ("[A]lthough the Second Circuit has not directly addressed how *Darnell* affects a parolee's claim, district courts in this circuit have applied the Fourteenth Amendment standard to claims brought by parolees after *Darnell*.") (citing cases), *report & recommendation adopted in part, and remanded in part to the Magistrate Judge on other grounds, sub nom.*, *Smith v. Russo*, 9:17-CV-244, 2019 WL 4602140 (N.D.N.Y. Sept. 23, 2019).

To state a claim of a violation of substantive due process under *Darnell*, a parolee must allege sufficient facts to satisfy two prongs – an objective prong and a mental-element prong.

---

[5] "[A] governmental entity may have a constitutional obligation to provide . . . protection, either because of a special relationship with an individual, or because the governmental entity itself has created or increased the danger to the individual." *Yin Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198, 201 (1989)). "Special relationships that have been recognized to give rise to a governmental duty to protect against . . . attacks have included custodial relationships." *Id.* (citing *DeShaney*, 489 U.S. at 198-99.). "[A] parolee and the State share a custodial relationship for purposes of substantive due process because the parolee is in the State's legal custody and 'his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed.'" *Golian v. New York City Admin. for Children Servs.*, 282 F. Supp. 3d 718, 728 (S.D.N.Y. 2017) (quoting *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005)).

*Darnell*, 849 F.3d at 29. Under the objective prong, a parolee must allege "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to [substantive] due process . . . ." *Id.* "[T]o establish an objective deprivation, 'the [parolee] must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citations omitted). And under the mental-element prong, the parolee must allege "that the [government official] acted with at least deliberate indifference to the challenged conditions." *Id.* at 29. Under the *Darnell* standard, a government official is deliberately indifferent when he or she "act[s] intentionally to impose the alleged condition, or recklessly fail[s] to act with reasonable care to mitigate the risk that the condition pose[s] to the [parolee] even though the defendant-official kn[ows], or should have known, that the condition pose[s] an excessive risk to health or safety." *Id.* at 35. In addition, the "[d]efendants may only be liable for deliberate indifference if their conduct would 'shock the contemporary conscience.'" *Reid v. Dumberger*, No. 17-CV-1124, 2018 WL 840092, at *9 (S.D.N.Y. Feb. 12, 2018) (quoting *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008)). And "any § 1983 claim for a violation of due process requires proof of a [defendant's state of mind] greater than mere negligence." *Darnell*, 849 F.3d at 36.

Plaintiff alleges that he was a convicted prisoner while he was incarcerated at Downstate and Five Points, and a released parolee while he was being treated at Elmhurst. But he fails to allege any facts showing that Downstate staff members were deliberately indifferent to his serious medical needs when, while he was incarcerated at Downstate, he was injected with a

"techna shot" that made him feel weak.[6] He also fails to allege any facts showing that Five Points staff members were deliberately indifferent to his future serious medical needs when they denied his request to be issued a pair of boots so that he could walk on fallen snow upon his release on parole. He further fails to allege any facts showing that Elmhurst staff members were deliberately indifferent to his serious medical needs when they removed the dressings from his feet after they amputated his toes.

The Court therefore dismisses Plaintiff's claims under § 1983 against Downstate, Five Points, and Elmhurst staff members in their individual capacities for failure to state a claim on which relief may be granted. *See* § 1915A(b)(1). But because Plaintiff is proceeding *pro se*, the Court will grant him leave to file an amended complaint in which he alleges sufficient facts to state such claims. Plaintiff must name as defendants those Downstate, Five Points, and Elmhurst staff members who violated his constitutional rights, and allege facts showing those defendants' personal involvement in the constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (personal-involvement requirement for individual liability under §1983).[7]

---

[6] These are the only allegations that Plaintiff states about being incarcerated at Downstate

[7] Under the doctrine of Eleventh Amendment immunity, Downstate and Five Points staff members, like other employees of the New York State Department of Corrections and Community Supervision (DOCCS), are immune from suit with respect to claims under § 1983 for damages or injunctive or retrospective declaratory relief in their official capacities. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984); *Marshall v. Lilley*, No. 19-CV-11829, 2020 WL 905989, at *6 (S.D.N.Y. Feb. 21, 2020). The Court therefore dismisses Plaintiff's claims under § 1983 against the Downstate and Five Points staff members in their official capacities under the doctrine of Eleventh Amendment immunity.

NYC Health + Hospitals (formerly known as the New York City Health & Hospitals Corporation) is a public benefit corporation that was created by New York State law; it operates Elmhurst, and it can be sued. *See* N.Y. Unconsol. Laws §§ 7384(1), 7385(1). Plaintiff's claims against Elmhurst staff members in their official capacities are thus redundant of claims that Plaintiff can assert against NYC Health + Hospitals. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local

## CONCLUSION

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.

The Court dismisses Plaintiff claims under 42 U.S.C. § 1983 against Mt. Sinai and Lawrence staff members and Lawrence patients for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1). The Court also dismisses Plaintiff's claims under § 1983 against Downstate, Five Points, Elmhurst staff members in their individual capacities for the same reason, *see id.*, but grants Plaintiff 30 days' leave to file an amended complaint in which he alleges sufficient facts to state such claims, and in which he names the appropriate Downstate, Five Points, and Elmhurst staff members as defendants. The Court further dismisses Plaintiff's claims under § 1983 against Downstate and Five Points staff members in their official capacities because those officials are immune from suit as to those claims. And the Court dismisses Plaintiff's claims against Elmhurst staff members in their official capacities for failure to state a claim on which relief may be granted.

---

government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief."). The Court therefore dismisses Plaintiff's claims against Elmhurst staff members in their official capacities for failure to state a claim on which relief may be granted.

If Plaintiff fails to file an amended complaint with regard to his claims under § 1983 against Downstate, Five Points, and Elmhurst staff members in their individual capacities, the Court will dismiss those claims for failure to state a claim on which relief may be granted, *see id.*, and will decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

SO ORDERED.

Dated:   September 21, 2020
         New York, New York

                                                    *Louis L. Stanton*
                                                    Louis L. Stanton
                                                    U.S.D.J.